Good morning. My name is Jeffrey Kessler, as you just noted. I am counsel for the appellants, the Reggie White class. Your Honors, there are two important issues presented by this appeal. One under Rule 23E of the Federal Rules of Civil Procedure, and one under Rule 60, 60B in particular. With respect to Rule 60B, I would just note that we submitted just yesterday supplemental authority from the Fifth Circuit, which is Yesh Music v. Lakewood Church, and this reviews all of the prior case law. And it's now clear that at least six, if not seven other courts of appeals, because they actually added in the Third Circuit, have adopted the rule that Rule 60B does in fact apply to a Rule 41 stipulation dismissal. Your Honor, we would urge you to review that recent authority. We believe that if you have to reach the Rule 60 issue, which you may not have to do, that this circuit should join the six or seven other courts of appeals, who have all concluded that because a Rule 41B stipulation is a proceeding, and because of the equitable purposes of the rule, and in fact should apply. If that's correct, then the Rule 60 issue alone would require remand to the district court if you reach that issue. However, Your Honor, as we stated in our brief, you do not have to reach the Rule 60 issue if you find for us with respect to Rule 23E. And so I'm going to first turn to that issue in my argument this morning. With respect to Rule 23E, this is an extremely important issue under Rule 23. And the specific issue is whether the claims of class members under a class action settlement agreement can be compromised and released in a Rule 41 stipulation, what we call the SOD, stipulation of dismissal, without judicial review, without class notice, and without a court determination that the release of the class claims is in the best interest of the class. We submit that the plain language and text of Rule 23E and Rule 41 make it clear that the court below was in error when it concluded that it could not be subject to such review. Specifically, Rule 23E states as follows, at least since 2003, the claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. Only is a very powerful word. There's no exception to that only. So on the plain text of the rule, this was, we believe, a compromise and release of class claims under a settlement agreement. And therefore, there had to be court approval and the determinations of Rule 23E. Mr. Kessler. Go ahead. Well, I will go first just because my question is probably pretty basic. What is the jurisdictional or legal basis that you have, for your petition to reopen the antitrust case, because you say that your petition is pursuant to the FCJ and the SSA. What is the fundamental jurisdictional basis that you're bringing this act to? Yes, Your Honor. There are two grounds that we have for jurisdiction. The first is the FCJ itself, the final consent judgment, states that the court retained exclusive jurisdiction over this action to infectuate and enforce the terms of the stipulation and settlement agreement as amended. And this is a claim for a breach of that settlement agreement when it was still in effect. And what governs it as a contract is just a statute of limitations. And as long as you have a claim within the statute of limitations, there has to be jurisdiction to enforce that contract. Second, Your Honor, under the Jenkins case, which I know Your Honor is familiar with, the terms of this settlement agreement were embodied in the consent judgment. It was made part of the injunctive relief as follows, ordered and adjudged that the terms of the stipulation and settlement agreement as amended are incorporated into and made part of this final consent judgment. What Jenkins held in 2007, since there are many Jenkins cases, as Your Honor knows, is that even if we didn't have that language, once it's incorporated into the judgment, the courts always have ancillary jurisdiction to enforce their prior orders. But here, we have the added fact that the order itself retains the jurisdiction. So our jurisdiction, Your Honor, is to enforce the terms of the white settlement agreement for a prior breach. Judge Wallman. Aren't the claims that were settled in the stipulation of dismissal unrelated to the white case? I don't see the relationship. The claims in the stipulation of dismissal that are at issue was claims that the Reggie White settlement was in a settlement agreement, originally seven year agreement was extended ultimately for almost 19 years. I think 17 or 18 years of injunctive relief that in 2010, that settlement agreement was violated against class members by violating the injunctive relief provisions against collusion and there being no salary cap. So the stipulation of dismissal claims are specifically only under the Reggie White settlement agreement. That is in fact what the claims are that were at issue. In fact, when we filed below with the district court, the court said you have released those claims under the Reggie White settlement agreement and therefore you cannot bring them. That's why we're here is the court said it had no jurisdiction any longer to consider claims for breach of the Reggie White settlement agreement because they had been released. So I don't think it's disputed that these are claims under the Reggie White settlement agreement that are at issue. Now, going back to the plain text, so Rule 23 clearly says only. There must be court approval. And the reason for that is to protect the claims of absent class members. It doesn't matter what the parties agree to. On either side, the whole purpose of 23E is to make a determination for the absent class members. Well, then we will look to Rule 41 and see does Rule 41 say anything differently. And Rule 41 says when you can dismiss without a court order, it starts with subject to Rule 23E. So it's very clear that Rule 41 was drafted with the idea that if you're dismissing a class claim, you have to comply with Rule 23E. That's just a plain text of both rules. Picking up on this, Moore's Federal Practice summed up the answer as follows. They said read together, the two rules mean, this is what Moore says, that unlike an ordinary claim which may be voluntarily dismissed by mere notice to the court, a class claim may not be dismissed or settled without approval of the court. So what does the NFL say in response to that? The NFL does not actually try to justify the court's decision below, which was that it had no jurisdiction to consider this, because that can't be justified in light of the final consent judgment and the decision in Jenkins. So what the NFL does, it advances new arguments, which we believe equally cannot justify the result below. Argument number one is that these are not class claims. And the argument is, well, because they're claims for violation of a class action settlement agreement, somehow they're not the same as class claims under the rule. Well, this is clearly not the case. First of all, if they were not class claims, if we only dismissed individual claims, then the court below made an error because all individual class members can now bring their claims. And the court ruled it had no jurisdiction to consider that. So the whole premise has to be, and the NFL's argument is, the court has said there could be no class claims anymore by the absent class members. There was no individual who submitted the SOD. It was submitted on behalf of the class. That's why it went to the court. And it is giving up the rights of the class members, many of whom, by the way, do not belong to the union because they're retired players. So there's not an identity between the union and the class claims. This is very similar to the situation in the airline stewardess' case we cited in the Seventh Circuit, where they said a union doesn't necessarily stand in the shoes, is not even an adequate representative necessarily for the members of a separate class, because there could be different memberships and different interests. And so these were clearly class claims. We believe that were dismissed. That's what we're asserting. But again, we would win either way in reversal, because if they're class claims, they needed Rule 23. And if they're not class claims, then the class should now be able to pursue the petition. So on either basis, the NFL can't save this with their class claims argument. The next argument the NFL makes is that a union is somehow special and has the ability to avoid Rule 23. Here again, we rely first on the airline stewards and stewardess' class case, which is the case we think is most on point, that says, just like any other class representative, a union must comply with the strictures of Rule 23. You can't avoid the Rule 23 requirements just because you're a union, especially when there's no identity of interest between the union and the class. That's at issue here. So that can't work, whether it's a union, whether it's class counsel. No matter who it is, you must comply with Rule 23. I also want to note, Your Honor, that as a point of almost personal privilege, we take offense at the idea that there's an insinuation in the NFL's papers that somehow there was gamesmanship being played here by appellants or the union or class counsel. While I am precluded from revealing the settlement discussions below, because we have a court-ordered confidentiality agreement, it was court-ordered mediation, what I can assure the court is that there was no gamesmanship here. Every person could see the plain text of Rule 23. It is clear to all the parties. And for whatever reason, the NFL chose to take the risk that it was not complying with Rule 23 with the court. And ultimately, it's the court that has to protect the absent class members. And so to us, it is a clear issue of the plain text of the rules that must be applied here. Was class counsel involved in these negotiations when the stipulation of dismissal was reached? Absolutely, Your Honor. Is there not some sort of preclusive or estoppel effect that can be raised at this time, since the class was represented at that time? I guess more bluntly stated, why weren't these arguments made at the time by class counsel and by the players' association? Well, to answer each of your questions, Your Honor, first of all, there can't be any estoppel because the whole purpose of Rule 23E is to protect the interests of the absent class members who are not behind the court but before the court. In every Rule 23E situation, there is a class counsel presenting a deal and a defendant presenting a deal, or it could be a plaintiff's class. But there are parties, and what the rule says, the court is the guardian of the absent class members. So there can't be estoppel to the class, that's number one. Number two, Your Honor, says the burden with respect to seeking approval of this release, which benefited the NFL. There's nothing in the stipulation dismissal that benefits the class, was for the NFL. For whatever reason, they made a choice, despite the clear language of the rule, to not press the court to go through the Rule 23E approval procedures. Maybe they thought the court would reject it. Maybe they thought a hearing wouldn't let that get through. That's the whole purposes of Rule 23. So they have to bear the responsibility now for not having done that. We insisted that, and it was presented to the court. But the NFL never made a motion for further proceedings, and the court never made any further proceedings. At that point, Your Honor, the absent class members never had the determination they were entitled to. And again, if this was not a class release, if this was just individuals, if this just bound the union, for example, who was represented, then all the class members must now be free to proceed, because there was nothing to bind them. So either this was a class release, in which the absent members must be protected, or this was not a class release, in which case they should be able to go forward anyway. I also note, Your Honor, that there's an issue that the NFL may raise about a CBA release. A CBA is not before the court, and it could not be before the courts. My question was, of what relevance is the CBA in this action? The CBA has no relevance in this action. It is subject to exclusive arbitration. Your Honors know, under the Steelworkers Trilogy, that means it has to be decided by the arbitrator. No issue is presented under the release. And further, Your Honor, the CBA does not mention the stipulation of dismissal. So in no way is the CBA in any way tied to or related to this. Your Honor, I see I missed my- I've got a couple- Oh, please. Questions, and one of them is in the district court's opinion on the Rule 60B, it says the court concludes that declining to reopen the matter achieves the appropriate balance between bringing litigation to a close and satisfying the equitable principles of Rule 60B. That sounds like a ruling on the merits, which brings in an abuse of discretion here. What's your response to that? Your Honor, despite that one sentence, the court made no findings about that and actually accepted no submissions about that. The sole issue it decided was that it believed it should follow the unpublished decision in the Eighth Circuit, which said that Rule 60 didn't apply because there was no order. I do agree the court made that comment, but the whole point of abuse of discretion is the court explains its reasonings and its findings. We had no submissions on the merits of the Rule 60 motion. In fact, we asked for discovery to be able to present on the merits of the Rule 60 issue, and the court said since it found Rule 60 didn't apply, there was no need for any discovery and denied it in the same order. So that was never reached, Your Honor. We believe it's a de novo pure legal issue as to simply the legal issue as to whether Rule 60 is applicable or not. The other question revolves around the Rule 41A, and the question I think was raised by appellants or appellees, that you had not raised in your petition or in the district court until the 60B motion and the issue that Rule 41A did not, well, I can't read my notes. Something about that, the waiver issue. There's a second issue, which is whether Rule 41 at all applies when you're not dismissing the whole action, because it was clear that the stipulation of dismissal here preserves certain claims, and we believe Rule 41 by its terms only applies to whole action. Appellee said we did not raise that below. That is not correct. We cited a reply brief where, in fact, it was raised below in our briefing. Okay. That's all I had. Okay. I'd hoped to save a five-minute rebuttal, but I will be at the court's discretion when I get back up. Thank you. Thank you. Good morning. Good morning. May it please the court. I'd like to start by taking a step back and noting the unique posture in which this case arises. This is not a case of an absent class member challenging the actions of class representatives or class counsel, nor is this a case of a union member asserting a breach of his union's duty of fair representation. Here, the parties challenging the validity of agreements entered into by the union and class counsel are the union and class counsel. The SART parties seeking to nullify the releases in covenant not to sue are the releaseors themselves. Appellants argue that contract terms that they negotiated, that they voluntarily entered into, and in exchange for which the players have received substantial consideration, should be nullified. They do so based on an extraordinary premise, that procedures intended to prevent abuses by those in a representative capacity, like class counsel and the union, were not implemented here. Not a single case cited by appellants supports relief in these circumstances. Moreover, appellants are not arguing that their global bargain should be nullified in its entirety. They are not suggesting that consideration received by players over the last three years, including an end to the lockout and literally billions of dollars in compensation and benefits, should be restored to the status quo ante. Instead, appellants ask this court to peel off and void the principal consideration that they provided, the release in covenant not to sue, and to leave intact the rest of the comprehensive agreement, the obligations of the NFL and its member clubs. The principal justification that they offer for disturbing the finality of this proceeding is illusory. The notion that the NFL, the district court, and the appellants all abdicated their responsibilities by failing to invoke Rule 23 is not only wrong as a matter of law, but it's also fundamentally inconsistent with the manner in which the parties resolved numerous claims under the stipulation and settlement agreement over a period of 18 years. For example, on August 11, 2011, after the stipulation of dismissal had been filed, Judge Doty entered a text entry noting the dismissal of appellants' first 2010 collusion claim and their TV revenue claim. There was no Rule 23 notice regarding that aspect of the settlement agreement. There were no Rule 23 hearings addressing resolution of those claims. There were no Rule 23 findings about fairness or reasonableness of terms. Notably, neither the union nor class council ever suggested to Judge Doty that those dismissals, or numerous other compromises or settlements of claims that preceded them, were invalid due to a lack of Rule 23 process. Nor did appellants file a notice of appeal or a petition to reopen seeking to resurrect those claims on the ground that they had been dismissed in violation of Rule 23. And appellants knew that it was not required that Rule 23 process was not required as to those claims, just as it knew that Rule 23 process is not required for the claim at issue here. But what's even more notable is that no one, not a single member of the union or a single member of the purported class, has come forward to challenge dismissal of those other claims, and why. The reason is that the releases in Covenant Not to Sue are elements of a broader comprehensive labor settlement. And this goes to the question that Judge Wallman asked. There was a comprehensive labor settlement reflected in the collective bargaining agreement. That agreement established terms and conditions of employment for a decade in the NFL, and it brought labor peace to an industry mired in litigation and discord. The agreement was intended to bring to an end one era of labor relations and to open the door to another, and it did just that. During the three NFL seasons in which the agreement has been in place, the players in the league have all flourished. Among other things, billions of dollars have been paid to current and retired players in compensation and benefits. Appellants have not offered to return or tendered any of the consideration received as part of that comprehensive agreement. That alone should be the end of the matter. As the Second Circuit held in Brown v. City of South Burlington, avoiding a contract of relief requires a return of any consideration received by the releaseor. The failure to return or to offer to return such consideration, in effect, ratified the global agreement of the releases in Covenant Not to Sue are apart. In any event, by what standard would the district court today determine three years into the agreement whether the comprehensive labor agreement, including the releases in Covenant Not to Sue, was fair and reasonable? And if the district court were to find that the agreement was not fair and reasonable, what would the remedy be? Would it order the parties to return to the status quo ante, a lockout and no collective bargaining agreement? These are not idle rhetorical questions. They are crucial to the resolution of this appeal because both the stipulation of dismissal and the CBA are labor agreements. They are both agreements between a certified labor union, the NFLPA, and a multi-employer bargaining group, the NFL and its member clubs. Both agreements and the claims that those agreements released concern wages, hours, and other terms and conditions of employment. They address mandatory subjects of collective bargaining, as Judge Doty found at the outset of this proceeding more than 20 years ago. The fact that they are labor agreements and that the fact that the claims and the releases address terms and conditions of employment dictate the outcome here. Federal labor law bars judicial assessment of the fairness and reasonableness of terms and conditions of employment to which labor and management have agreed. And make no mistake, even with regard to the stipulation of dismissal, that was signed by Mr. Kessler as class counsel and on behalf of the union. The union is a party to that agreement, just like class counsel was. By the same token, the union is a party to this proceeding. Mr. Kessler introduced himself as counsel for the class, but the union is an appellant here. And the union is bound in a stop by the collective bargaining agreement and stipulation of dismissal, just as class counsel are. Federal labor law makes absolutely clear that in unionized industries, terms and conditions of employment must be determined at the bargaining table. Supplemented by tools such as strikes and lockouts afforded by the labor laws, but without substantive review of the agreed upon outcome by federal courts. That principle was most recently articulated by the Supreme Court in the 14 Penn Plaza case, where the court held judicial nullification of contractual concessions is contrary to one of the most fundamental policies of the NLRA, freedom of contract. That is precisely what appellants seek here. Judicial nullification of the stipulation of dismissal and judicial nullification of Article 3 of the Collective Bargaining Agreement. Rule 23 can't trump this basic principle of federal labor law. The Rules Enabling Act makes clear that by stating that the rules of civil procedure shall not abridge or modify any substantive right. The Supreme Court in Ortiz and more recently in Dukes apply that principle specifically to Rule 23. Appellants simply do not engage on 14 Penn Plaza, on Metropolitan Edison, on Insurance Agents International, on Monaghan, or on any of the other cases cited in our brief that confirm that not only that federal courts are barred from evaluating the reasonableness of collectively bargained agreement, but also that employees are bound by their union's waiver of non-statutory rights and claims. Instead, appellants cite the Seventh Circuit's 40-year-old decision in Airline Steward's case. And Mr. Kessler referred to that case twice this morning. But that case fits squarely within the narrow exception that at the time allowed judicial review of agreements resolving statutory claims of discrimination. The claims in Airline Steward alleged discrimination under Title VII, not a breach of a collectively bargained agreement like that alleged here. The Seventh Circuit stated twice, once at page 642 of the opinion, once at page 640 of the opinion, that its analysis would be fundamentally different if those statutory claims had instead arisen out of collectively bargained agreements. Thus, even if Airline Steward survived 14 Penn Plaza, and ISIS suggests that it did not, it would have no application here. In short, even if this court were to find that the claims appellants seek to bring here are claims of a certified class, their arguments would fail because federal labor law precludes substantive review of both the CBA and the stipulation of dismissal. But the claims that appellants seek to bring are not the claims of a certified class. No class was defined or even suggested in the petition to reopen. No affected class member was identified. No class representative was put forward. The petition contains no allegations of commonality or typicality, the hallmarks of a class action. It doesn't even include a reference to Rule 23. But more important, the stipulation and settlement agreement itself expressly provided in Article 13, Section 5, that collusion claims could be asserted on behalf of a single player or a group of players without invocation of a class action machinery. Indeed, Article 13, Section 18 of the Stipulation and Settlement Agreement encouraged the parties to negotiate to resolve such claims without even suggesting that their resolution would be subject to court approval. And that's precisely what the parties did here. As Judge Doty found in his initial order at page 10 of the addendum, in other words, the NFLPA released the claims it attempts to assert in the underlying action. The NFLPA released the claims that it attempts to assert in the underlying action. That holding, which recognized that the petition to reopen was futile in light of the stipulation of dismissal, was plainly correct. The stipulation of dismissal covers all claims, known and unknown, whether pending or not, regarding the Stipulation and Settlement Agreement. Let me ask you a question. A minute. Reading your briefs and listening to you now until this recent point, it sounds to me like you're arguing differently than the district court did and that you're defending the opinion, the district court's opinion, on broader grounds or different grounds.  And how do you explain what appeared? Of course, you don't know what I'm thinking, but how does it sound like you're arguing differently than what the district court reasoned here? Your Honor, I think the district court did get it right, and I think the key to its opinion is reflected in two separate sentences of its opinion. And on page 10, the court... About the first opinion? It's the first opinion. Page 10 in the first opinion, as the court is concluding its opinion, it's the third sentence from the end of the opinion, the court writes, In other words, in other words, the NFLPA released the claims that it attempts to assert in the underlying action. And back on page 7 of the same opinion, when the court is discussing why it doesn't need to reach other grounds for rejecting the petition to reopen, the court says, Because the NFLPA dismissed all claims pertaining to the underlying action. Those findings, in my view, are the key to the court's opinion. They're clearly correct. They lead inevitably to the conclusion that the petition to reopen would have been futile because the claims that the appellant sought to bring would have been barred at the threshold. All of that is a legal conclusion, which we've reviewed at de novo. What's your response to my comment about it sounded to me like the district court may have ruled on the merits... I think the court did rule on the merits of the Rule 60B because you can rule in one sentence, but it's pretty thin. Your Honor, it's right on the money. It's right on the mark. The issue that the court is expected to determine in resolving whether to reopen a proceeding under Rule 60B is whether the interest and finality are outweighed by the claim to do justice, in effect. And what we have here is the court saying, in unambiguous terms, the court concludes that declining to reopen the matter achieves the appropriate balance between bringing litigation to close and satisfying the equitable principles of Rule 60B. And when you look at the equitable principles of 60B, the court is also free and the court was also free. Mr. Kessler said there were no submissions on this point. That's not right. There were submissions showing that the appellants had failed to offer a legitimate ground for Rule 60B assertion that there had been fraud committed. The standard is fraud on the court, fraud in the litigation process, not transactional fraud. There's also evidence introduced in the record of the CBA release, and the court was also free to consider when it was evaluating the equities of these issues whether the CBA release, which also and independently barred the claims that appellants sought to bring, would render a Rule 60B order of relief futile. So my view is, Your Honor, that the passage that you identified is squarely on point, it's squarely justified by the record, and it is a reflection of an exercise of discretion as to which this court in the ordinary circumstances would defer, but the considerations for deferral here are even more compelling given the extent to which Judge Doty was responsible for this proceeding, familiar with the parties and familiar with the issues. Now, I want to add one. This is kind of just a little side point just for clarification. You've mentioned in your argument you referred to Rule 60B relief with respect to a proceeding. Are you conceding that Rule 60B relief is conceivably available or is the appropriate rule and can be utilized in this kind of situation, particularly in light of the supplemental authority that counsel mentioned, the Yesh case? Your Honor, I'm not conceding that at all. I think this court, albeit in unpublished opinions, has gotten it right twice. Once, the most recent example, the panel on which Judge Wallman sat was only six years ago, and as far as the Yesh case is concerned, I'd encourage the court to read the dissent of Judge Jolly, which is a thoughtful, analytical dissent, which takes issue with the applicability of the very cases on which the majority rely. I don't disagree with the fact that the Yesh case came out the other way, but I think that the fact that a respected judge like Judge Jolly, in a carefully written, thoughtful opinion, came out the same way that the Eighth Circuit has come out on this issue, ought to offer some support for adhering to the same standard. I believe that the Eighth Circuit got it right in the two prior instances in which the issue was raised, and part of the reason for that, aside from the plain language of the rule, is the fact that, as this case demonstrates, there are potentially, when a court reverses its own action, its own judgment, it's operating on a record with which it's familiar and in a context that is limited. When a court overturns a stipulation of dismissal, more often than not, it's part of a broader settlement agreement, and that's the situation here, and it's very difficult to go back and unwind the agreement months or even years later. So it seems to me that the rulemakers knew precisely what they were doing in drawing a line between judgments and orders on the one hand and stipulations or voluntary dismissals on the other. And the notion that a stipulation of dismissal constitutes a proceeding, that argument, in my view, is an act of legal leisure domain. It's exactly what Judge Jolly called it. It was an effort to fit a round object into a square hole. It just didn't make any sense at all. I want to add one additional point on the first issue, the Rule 23 issue, and that's this. Appellants, by the time they get to their reply briefer, are no longer contesting our textual arguments, demonstrating that the claims that they seek to bring are covered by the stipulation of dismissal and by the CBA release. But in addition, appellants don't dispute that federal labor law itself provided the procedural safeguards that they claim were missing due to the absence of Rule 23 process. And by that I mean free selection of the player's bargaining representatives, the union's duty of fair representation and associated remedies for its breach, the requirement of notice to the union members, and the requirement that any collectively bargained agreement be submitted to the union membership for ratification. All of those safeguards were present here. Now, I want to go back and emphasize, I see that my time is running out, but I want to go back and emphasize one additional point. Appellants never did assert a proper ground for Rule 60B relief. Rule 60B affords relief only for misconduct aimed directly at the trial process, not commercial transactions or transactional misconduct of the kind that appellants allege here. And on that issue, I would invite the Court's attention to Judge Boudin's opinion in the Roger Edwards case, which makes clear that Rule 60B claims of the kind at issue here should be rebuffed at the threshold. I thank the Court. Thank you, Mr. Levy. I hope you'll give me a little bit more time. On 60B, it is not an abuse of discretion standard, Your Honor. In fact, if you look at the opinion, what happened is Judge Doty first ruled he would not allow discovery on the fact issues because since he concluded Rule 60 did not apply, he said it would be futile. Then he noted the parties have not submitted memorandum of law regarding the motion to reopen under Rule 60B. In other words, that wasn't even argued to him, and he just said, but I'm denying that for the same reasons I denied the discovery in order to present the issue. So he never reached the merits at all despite that sentence. Second, Your Honor, it is not- He was just thinking out loud? I believe, Your Honor, maybe if he had a full hearing, he was thinking he might do that someday, but no briefs were presented, no evidence, no record, no argument. He just notes I'm ruling on the discovery motion and then said, by the way, now I will dismiss the Rule 60 without briefs for the same reason as the discovery, which is that Rule 60 can't apply, which we submit is wrong. On the Rule 23 issue, which is correct- Just a quick question. Yes. If the court were to agree with you on the Rule 60B and agree that the district court made a mistake there and agree to be that this recent case is persuasive and the position of the other circuits, would an appropriate resolution here be to simply remand the matter back- Yes, Your Honor. ...period without going to the other issue that's been argued and give the district court an opportunity to take another look at this whole thing? The court could do that. You certainly should not comment on the merits of the Rule 60 motion because if you remanded on that, the court would consider that in the first instance below and take a factual record about that issue. Going to Rule 23, though, which is important, the CBA, which is the labor piece, does not mention the SOD. Mr. Levy, when he said it's in the CBA in Article 3, that is submitted in the record, Your Honor. It is not in the CBA in Article 3. It doesn't appear. It's not part of the consideration. And his entire argument is premised on the notion that a union has the authority to compromise these claims without Rule 23 approval. Number one, there's no case he can cite that has ever said that. The only case that's considered this in the Seventh Circuit, persuasively an airline stewardess explains why that's not proper. The union is not contiguous with the class. For example, this case- You're way beyond your time. Okay, Your Honor. I'm sorry. I apologize. I think you've made your point. Thank you very much, Your Honor. Thank you. I appreciate it. Thank you. Okay, we appreciate your arguments. Very well argued, both in the briefs and orally, and we'll take it under advisement and be back to you in due course. Thank you very much.